NOAH A. WHITNEY v. JULIA MEISTER ET AL.

PURCHASER WHO ACCEPTS DEED SUBJECT TO MORTGAGE NOT PERSONALLY LIABLE TO MORTGAGEE, WHEN.

A purchaser of real estate who accepts a conveyance made expressly subject to a mortgage, and receives an abatement in the purchase price on account thereof, is not, in the absence of an express covenant, personally liable for the payment of the mortgage. The land is, in such case, the primary security, and in case of a deficiency upon foreclosure sale the vendor is liable therefor; but after payment thereof, he is, as between himself and the purchaser, entitled to indemnification from the latter, and to such extent is subrogated to the rights of the mortgagee in the land.

ERROR to Lucas common pleas court.

**Troup & Truesdale,** for plaintiff in error:

Taking a deed subject to an outstanding mortgage, creates no personal liability on the grantee to pay off the incumbrance, unless he has by contract, expressed or clearly implied, specially agreed to do so. To charge the purchaser, there must be apt words used in the deed itself, which clearly imply an obligation intentionally created by the one party and assumed by the other, to constitute a personal obligation for its payment. 1 Jones, Mortgages Secs. 748, 749, 751; Rapp v. Stoner, 104 Ill. 618, 624.

Refusal by grantee to assume is strong evidence that grantee did not assume. Vilas v. McBride, 62 Hun 324 [17 N. Y. Supp. 171]; Tillotson v. Boyd, 4 Sandf. 516; Hubbard v. Ensign, 46 Conn. 576, 583.

The covenant in the deed cannot be construed into a covenant to pay the mortgages. It is only a limitation of the covenants of warranty. Hoy v. Bramhall, 19 N. J. Eq. 74, 78; Belmont v. Coman, 22 N. Y. 438 [78 Am. Dec. 213].

Whenever the mortgage debt forms a part of the consideration of the purchase, although the purchaser has not entered into any contract or agreement to pay it, he is bound to the extent of the property to indemnify the grantor. The law implies a promise to that effect from the nature of the transactions; but the purchaser is under no personal liability to any for such mortgage debt. 1 Jones, Mortgages Sec. 751; Belmont v. Coman, 22 N. Y. 438 [74 Am. Dec. 213]; Equitable Life Assur. Soc. v.

Bostwick, 100 N. Y. 628 [3 N. E. Rep. 296]; Bristol Sav. Bank v. Stiger, 86 Iowa 344 [53 N. W. Rep. 265, 266].

T. N. **Bierly** and J. **Dickey**, for defendants in error.

**HAYNES, J.**

The facts in this case are, that one Matilda Wechtel and her husband were possessed of certain property in the city of Toledo, on Nebraska avenue and upon Wabash avenue, upon which there were two mortgages, one in favor of the Ohio Savings Bank for about $2,000, which was afterwards transferred to R. B. Mitchell & Co., and the other to Julia Meister, for about $900. Whitney had certain parcels of land in Miami, in this county. The parties entered into negotiations, and finally concluded they would exchange their properties. After some little negotiation they entered into a written contract with regard to the matter. It was drawn up by the real estate men who were negotiating the sale. It is claimed by the plaintiff, Julia Meister, and perhaps by Mr. Wechtel, that at the time the trade was finally consummated and the deed made there was some conversation in regard to these mortgages. The writing had provided that Mr. Whitney was to take the Nebraska avenue property subject to the mortgages of $1,800 and $925, and it is claimed on behalf of Mrs. Meister that at the time the deed was executed there was a further agreement or conversation wherein Whitney assumed and agreed that he would pay those mortgages. The case was tried to the court, and the court rendered a personal judgment against Noah A. Whitney in favor of Julia Meister for the amount her mortgage of $925 and in favor of R. B. Mitchell & Co. for the amount of their mortgage of $1,800. R. B. Mitchell had filed a cross petition and set up their mortgage, but had not prayed for a personal judgment.

The deed that was made by Matilda Wechtel and her husband of the property on Nebraska avenue contained this clause:

"They will warrant and defend the same against all claim or claims of all persons whomsoever, except a certain mortgage of $1,800 held by the Ohio Savings Bank and Trust Company, of Toledo, Ohio, and a second mortgage of $925, due Julia Meister, of Toledo, Ohio."

The contention is, so far as the case is prosecuted in error, that the court of common pleas erred in rendering this personal judgment in the first instance against Whitney for the amount of these mortgages, the judgment and decree in fact being an ordinary decree of foreclosure and a personal judgment for the amount of the mortgages against Whitney, upon the claim that there was an arrangement verbally made by

Whitney at the time that the deed was executed that he would pay the mortgages. It appears to us from the evidence that the transaction was closed in pursuance of the written contract, and that this clause in the deed was written in accordance with the terms of the written contract. The exchange was the exchange of the properties. It is true that in their own minds they put a certain valuation on the lands, but the exchange was the exchange of the properties subject to the mortgage on one side and the improvements on the lots and lands on the other.

There were certain matters crept into the suit, and some effort to show the value of the property, that are not very material to this question.

The Wechtels did in fact execute a mortgage on the property which they received for about $1,900, and that was made up of some $750, which it was agreed was the difference in the trade, which was to be paid by the Wechtels to Whitney as boot money, and the amount of about $925 that was due upon the property fronting on Wabash avenue, included in the trade. The Wechtels held this Wabash avenue property by a purchase contract with Mr. Franklin, of this city; and they owed some $925 on the purchase money, never having received a deed from him. They assigned their contract to Whitney, and agreed to pay off the $925. And thereupon they executed this mortgage, and, as they testified, afterwards paid the amount of $925, which they were to pay to Mr. Franklin, into the hands of Mr. Whitney. The mortgage of Mrs. Meister, of course, was at the time on the other property, and the property was taken subject to that mortgage.

We think the court erred in rendering a personal judgment against Mr. Whitney in this case, for the amount of those mortgages. We think under the law of the land the plaintiffs were not entitled to such judgments. We think the most that can be said is, that the Wechtels were, under the transaction, to be indemnified in regard to those mortgages. The law stated in Jones on Mortgages seems to be sustained by a great many authorities. Jones, Mortgages Sec. 748 says:

"*Personal Liability of Purchaser.* A deed which is merely made subject to a mortgage specified, does not alone render the grantee personally liable for the mortgage debt. To create such liability there must be such words as will clearly import that the grantee assumed the obligation of paying the debt. * * *

"A purchaser of land accepting a deed expressly conveying it subject to a mortgage, and excepting it from the covenants, is not himself personally liable to pay it, unless he covenants to do so. The land in

such case is primarily liable as between the vendor and purchaser; and the vendor is liable for any deficiency.''

We are cited also to the case of Thompson v. Thompson, 4 Ohio St. 333, as sustaining the right of the parties to the judgments. The first syllabus is this:

''It seems to be a well settled principle, that the purchaser of an incumbered estate, if he agree to take it subject to the incumbrance, and an abatement is made in the price on that account, is bound to indemnify his grantor against the incumbrance, whether he expressly promise to do so or not—a promise to that effect being implied from the nature of the transaction.''

Perhaps it is proper to make a statement with regard to the facts of this case to get at the point which was decided. A man by the name of Thompson had purchased some property in Circleville, some sixty years ago. It had originally been sold in 1835 by a man by the name of Hamilton, who had given a mortgage back on the property to another party, and that other party to Thompson, subject to the mortgage, Thompson died, having made a will in which he devised this property for life to his daughter and remainder over to her children, if she had any, and if not, the remainder to his family. He provided in his will that all debts should be paid. An administratrix was appointed with the will annexed, and acting under that clause, had paid off this mortgage, which amounted to some $700, which was equal at least to two-thirds of the value of the land itself, the life estate in which had been willed to the daughter. An exception was taken by certain heirs to that payment, the administratrix having been notified before hand that an exception would be lodged against her if she paid that amount, the heirs claiming that the personal estate of the decedent was not liable for that mortgage—in other words, it was not a debt against the estate. The probate court overruled the exception and allowed the account of the administratrix as a proper payment, and the court of common pleas reversed the probate court. The case was taken to the old district court, and the district court reserved the case to the Supreme Court, and the point that was finally decided and judgment finally rendered, was a judgment of affirmance of the action of the probate court and the over-ruling of the court of common pleas.

Judge Thurman, in delivering the opinion of the court, discussed two views of the case which may be taken. He starts out by stating this proposition:

''It seems to be a well-settled principle, that the purchaser of an incumbered estate, if he agree to take it subject to the incumbrance, *

\* \* is bound to indemnify his grantor against the incumbrance, whether he expressly promise to do so or not—a promise to that effect being implied from the nature of the transaction.''

And he further proceeds to state that the agreed statement of facts is somewhat obscure as to whether there was an abatement in the price, and further discusses the facts and circumstances of the case, and concludes that there was. He then proceeds to discuss the question as to whether the administratrix was authorized to consider this as a debt and act upon that assumption, because they are not able to find from the statement of facts that there was any agreement on the part of Thompson when he took the land that he would pay the amount of the mortgage to the mortgagee. He simply took it subject to the mortgage, and under the rules of law was bound to indemnify, and his obligation was an obligation of indemnification, and not an obligation of payment. After discussing it upon the theory that it was an indemnification, and holding that the decedent had treated it as an indebtedness, having paid interest on the mortgage from the time he obtained the land until his death, and that the administratrix was justified in paying it, he says, page 353:

''I have so far considered the case upon the assumption that Thompson did not expressly promise Green to pay the debt, that view of the case being the most favorable one for the defendant in error. If he did make such a promise, it was upon a sufficient consideration, and an action of assumpsit could have been maintained upon it by the trust company, it being well settled, 'that if one person makes a promise to another, for the benefit of a third person, that third person may maintain an action at law on that promise.' \* \* \* And if such were the case, there could be no doubt that Thompson was a debtor for the money, and that his liability was covered by the clause in his will directing his debts to be paid. But it is, to say the least of it, doubtful whether the agreed statement of facts would warrant us in finding that such an express promise was made, and we prefer to place our decision on the other view of the case, with which we are entirely satisfied.''

There being, as we have said, no express promise in this case by which Whitney agreed to pay the amount of this mortgage to the respective mortgagees, we hold that there was no promise upon which a suit could be brought; that the obligation was an obligation of indemnification. He was bound to Wechtel, so far as Wechtel was concerned, to see that the mortgage was paid off; and if Wechtel was called upon to pay the notes which he had given, for which the mortgage was security, he then would have a right to call upon Mr. Whitney, upon this land, to enforce the

payment of that amount. In other words, he would be subrogated to the rights of the mortgagee, the right to enforce the claim against the land. That being the case, we think this judgment should be modified; that the personal judgment should be set aside and the decree itself modified to this extent; that the mortgage itself should first be foreclosed, the land sold, and if anything thereafter remains owing upon these mortgages or either of them, that a judgment may be entered by the court.

The decree is that the personal judgment be set aside, and the decree modified to this extent; that there shall be a sale of the land under the mortgage, and that if any portion of the indebtedness remains upon these two mortgages and the notes, that then the execution may issue against Whitney for the balance unpaid.

Parker and Hull, JJ., concur.